UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
LORETTA L. ALSTON,

          Plaintiff,

   -against-

CITY OF NEW YORK,
JOHN MURRAY,

          Defendants.
------------------------------------------------X

14 CV 8006

JUDGE BUCHWALD

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

RECEIVED
OCT 03 2014
U.S.D.C. S.D.N.Y.

Plaintiff Loretta L. Alston, by her attorneys, Lumer & Neville, as for her complaint against the defendants, alleges, upon information and belief, as follows:

## PARTIES, JURISDICTION and VENUE

1. At all relevant times herein, plaintiff Loretta Alston was an adult female resident of Kings County, in the City and State of New York.

2. At all relevant times herein, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD") and its employees.

3. Defendant John Murray whose shield number was 13107, was at all relevant times herein employed by the City of New York as a member of the NYPD, and was assigned to the 24th Precinct of the NYPD. Murray is being sued in both his official and individual capacities.

4. Original jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331, *et seq.*, and 42 U.S.C. §§ 1981 and 1983.

5. Venue is properly laid in this District pursuant to 28 U.S.C. §1391(b)(2), because the majority of events complained of herein occurred within the Southern District of New York.

## FACTUAL ALLEGATIONS

6. On October 31, 2012, during the aftermath of Super Storm Sandy, at or about 1:00 to 2:00 p.m., the plaintiff was lawfully operating a motor vehicle proceeding westbound on West 96th Street, seeking a location to purchase fuel for the motor vehicle that plaintiff was lawfully operating.

7. Upon seeing a gas station on the north side of West 96th Street, plaintiff pulled into said gas station.

8. During this period of the aftermath of Super Storm Sandy, it was extremely difficult to find gas stations that were selling fuel for the general public.

9. Plaintiff, after stopping her vehicle safely and appropriately, plaintiff asked someone at the gas station if there was a line to purchase fuel. Plaintiff was told by someone that yes, there was a line to purchase fuel.

10. At this time after plaintiff had stopped to ask about a line to purchase fuel, defendant Murray approached plaintiff and ordered plaintiff to move from the area because she was not on the line to purchase gas.

11. Plaintiff did not argue with defendant and complied with defendant's order.

12. Plaintiff proceeded to drive around the block, and pulled in at the end of the line of cars waiting to purchase fuel.

13. Plaintiff was then approached again by defendant Murray who inexplicably told plaintiff to move the car and to get off the line of cars waiting to purchase fuel.

14. Plaintiff asked defendant Murray why she had to move, stating that she needed to purchase fuel.

15. Defendant Murray then told plaintiff that plaintiff would not be purchasing fuel at that location on that date.

16. At that point, plaintiff requested Murray's badge number, precinct, and supervisor's name.

17. Defendant John Murray responded by telling plaintiff that defendant was going to tell his supervisor that plaintiff had hit defendant with plaintiff's car.

18. Murray knew this was untrue and a lie, as at no time did plaintiff hit defendant with the car plaintiff was driving.

19. Defendant Murray also stated something to the effect that plaintiff was threatening defendant, and defendant yelled something about plaintiff was trying to hit defendant with plaintiff's car.

20. Defendant then feigned injury and made a radio call that he had been hit by a vehicle. This was a lie, as plaintiff never hit defendant with plaintiff's vehicle or with anything else.

21. Shortly after the defendant made the above-described radio call about having been hit by a car, numerous NYPD patrol cars arrived on the scene.

22. The plaintiff was arrested and taken to the 103rd Police Precinct.

23. After spending a period of time in custody at the 103rd Police Precinct, the plaintiff, still in defendants' custody, was taken to New York County Central Booking.

24. The plaintiff remained in New York County Central Booking until plaintiff was brought before a Judge in New York County Criminal Court.

25. Plaintiff was charged with two counts of assault, one count of criminal possession of a weapon, and one count of obstructing governmental administration.

26. Defendant Murray knew and understood that the factual allegations against plaintiff were materially false at the time defendant made the allegations.

27. Defendant Murray had created or caused the creation of paperwork memorializing these false allegations with the understanding that the false allegations would be transmitted to the New York County District Attorney, who would commence a criminal prosecution of the plaintiff.

28. The false allegations were then transmitted or otherwise communicated by the defendant to the New York County District Attorney, who, relying on the statements of the defendant, commenced a criminal prosecution against the plaintiff under Docket Number 2012NY084436.

29. Defendant Murray's presentation to the New York County District Attorney of the false allegations and fabricated evidence against plaintiff was the proximate cause of the New York County District Attorney's decision to commence a prosecution of the plaintiff.

30. Plaintiff, who had been held in defendant's custody since the time of her arrest on October 31, 2012, was arraigned and then released on her own recognizance by New York County Criminal Court Judge Abraham L. Clott on November 1, 2012.

31. The plaintiff was required to return to court on three separate occasions thereafter.

32. On April 9, 2013, the prosecution against the plaintiff was adjourned in contemplation of dismissal.

33. On October 7, 2013, the prosecution was dismissed and sealed pursuant to Criminal Procedure Law Section 160.50, making plaintiff the prevailing party.

34. At all times relevant herein, the defendant was acting within the scope of his employment with the NYPD and the City of New York, and his acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

35. Plaintiff repeats each and every allegation of paragraphs "1" through "34" of the complaint as if incorporated and reiterated herein.

36. Defendant willfully and intentionally subjected plaintiff to false arrest and imprisonment, and the denial of her right to a fair trial through the fabrication of evidence, and in so doing, violated plaintiff's rights under the Fourth, Sixth and Fourteenth Amendments of the United States Constitution.

37. By reason thereof, defendant has violated 42 U.S.C. § 1983 and caused plaintiff to be deprived of her federal constitutional rights, and to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

## SECOND CAUSE OF ACTION

38. Plaintiff repeats each and every allegation of paragraphs "1" through "37" of the complaint as if incorporated and reiterated herein

39. The defendant's actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned or otherwise tacitly sanctioned by the municipal defendant designed to increase the number of arrests being made, without regard to whether the arrests were valid.

40. More precisely, under this policy or plan, New York City Police Officers are encouraged or pressured to make as many arrests as possible, which has caused

and will continue to cause, its officers, including the individual defendant and his colleagues within the New York City Police Department to make arrests regardless of whether there was any factual basis for the charges. The officer(s) would then fabricate claims of having seen the person(s) being arrested engaged in criminal activity.

41. The purpose of this policy or plan was to generate large numbers of arrests within the New York City Police Department generally, and, more specifically, within the individual commands therein, in order to create a false or misleading impression of positive activity by their officers.

42. In addition, members of the New York City Police Department are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the New York City Police Department routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

43. In an Order dated November 25, 2009, in *Colon v. City of New York*, 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among

7

officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

44. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

45. Moreover, tape recordings made of senior commanders within the 81 precinct as referenced in the litigation *Schoolcraft v. City of New York*, 10 CV 6005 (RWS) and newspaper accounts of the recordings, demonstrate the existence of arrest and summons quotas generally within the NYPD and that NYPD officers are expected to meet these quotas regardless of the legitimacy of the arrests and summonses.

46. It is also manifestly clear through the litigation brought in the Eastern and Southern Districts of New York that countless hundreds, if not thousands, of civilians have alleged that members of the Narcotics Bureau, as well as other commands within the NYPD, have deliberately arrested them without probable cause. Thus, even if the municipal defendant was not the architect of the policy causing these unlawful arrests, they were certainly on notice of the practice.

47. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York, at the bare minimum, has been on notice and was deliberately indifferent to the risk that the undue emphasis inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

48. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of her constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against the defendants jointly and severally as follows:

i. Actual and punitive damages against the individual defendant in an amount to be determined at trial;

ii. Actual damages against the City of New York in an amount to be determined at trial;

iii. Statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, as well as disbursements, and costs of this action; and

iv. Such other relief as the Court may deem just and proper.

Dated: New York, New York
October 1, 2014

LUMER & NEVILLE

By: _____
James Concemore Neville, Esq (JN-2128)
Attorneys for Plaintiff
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060